## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                **Plaintiff,**

vs.                                        **Cr. No.  09-2047 JH**

CARLOS DIAZ-ORTEGA,

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

The subject of this Memorandum Opinion and Order is the *United States' Motion to Reconsider* [Doc. No. 86], filed April 22, 2010.  The Government asks the Court to alter its ruling [Doc. No. 80] on Defendants' motions to suppress [Doc. Nos. 53 and 54].  Specifically, the Government takes issue with the Court's rulings with regard to Carlos Diaz-Ortega ("Diaz-Ortega"), who has responded to the Government's motion to reconsider.  After reviewing the arguments of the parties and applicable legal authority, the Court concludes that Diaz-Ortega lacks standing to challenge the search of the vehicle in which he was traveling, and therefore the motion to reconsider should be granted.

## BACKGROUND

The Court set forth the facts of this case in its previous Memorandum Opinion and Order, [Doc. No. 80] and will not repeat them here.  In that decision, the Court concluded in relevant part that as a result of his partial payment of the rental fee and his verbal agreement with the driver, Eder Zazueta, passenger Diaz-Ortega has standing to contest the search of the Chevy HHR in which they were traveling.  The Court also concluded that Diaz-Ortega's consent to the search of the vehicle was involuntary.  Thus, the Court granted Diaz-Ortega's motion to suppress with regard to co-

defendant Barboa-Cecena's statements made during the police officer's improper inspection of the VIN number on the doorjamb, as well as all evidence found during the search of the HHR and all statements by Diaz-Ortega subsequent to that search.  In the present motion, the Government argues first that Diaz-Ortega lacks standing to challenge the search of the HHR, and second that Zazueta gave valid consent to search the car, thereby eliminating the need to obtain consent from Diaz-Ortega.  Finally, it argues that Officer Valdez did not improperly detain Diaz-Ortega after the conclusion of the traffic stop, and even if he did, none of the evidence he seeks to suppress was not the "fruit" of such detention.  Because the Court agrees with the Government that Diaz-Ortega lacks standing to challenge the search of the HHR, it need not reach the issue of the voluntariness of his consent.  In addition, the Court finds that Officer Valdez had reasonable suspicion to detain all three defendants after the conclusion of the stop, and that even if he did not, that Officer Valdez discovered the evidence not because of that detention, but as a result of Zazueta's valid consent to search the vehicle.

## DISCUSSION

### I.     STANDING

It is undisputed that at the time of the traffic stop and subsequent search at issue in this case, Diaz-Ortega was not the driver of the HHR.  Rather, Zazueta was the driver.  It is also undisputed that only Zazueta's name appears on the rental car agreement as an authorized driver of the HHR. Diaz-Ortega's name cannot be found on the agreement.  Finally, the undisputed, though vague, testimony of both Zazueta and Diaz-Ortega is that Diaz-Ortega accompanied Zazueta to the rental car company and contributed an indeterminate amount to the rental fee.

In support of its argument that Diaz-Ortega lacks standing to challenge the search, the Government cites and relies upon several decisions from the Tenth Circuit regarding whether one

2

who is not the renter or authorized driver on a car rental agreement has standing to challenge a search of the car.[1]  The earliest of these is *United States v. Obregon*, 748 F.2d 1371 (10th Cir. 1984), in which the defendant argued that he had standing to search a rental vehicle that he was driving, even though his name was not on the car rental contract as either the renter or as an authorized driver.  Citing *Rakas v. Illinois*, 439 U.S. 128 (1978), Obregon argued that he had a legitimate expectation of privacy in the rented car, despite the fact that he may not have had a recognized property interest in the vehicle.  *Obregon*, 748 F.2d at 1374.  The Tenth Circuit disagreed, concluding that the district court was correct in holding that Obregon's relationship to the rented car was too attenuated to support a claim of standing.  *Id.*   Similarly, in *United States v. Roper*, 918 F.2d 885 (10th Cir. 1990), police seized drugs from a car the defendant was driving.  The common law wife of one of Roper's passengers had rented the car, and Roper's name did not appear anywhere on the rental contract.  *Id*. at 886.  Relying on *Obregon*, the Tenth Circuit concluded that because his name did not appear on the rental contract and he had no arrangement with the rental car company authorizing him to drive the car, Roper's relationship with the vehicle was too attenuated to support a claim of standing.  *Id*. at 887-88.  Just two months later, the Tenth Circuit addressed the issue again in *United States v. Jefferson*, 925 F.2d 1242 (10th Cir. 1991).  In *Jefferson*, several men riding in a car challenged the search of the vehicle that led to the discovery of narcotics. Once again, the Tenth Circuit found that neither the driver nor the passenger, neither of whom was the owner, had a protectable privacy interest in the car.  With regard to the driver in particular, the court reasoned that mere control of the vehicle is not enough to establish a Fourth Amendment right.

---

[1] The Government cited none of the foregoing cases in its response to the motion, though it did cite *Obregon*, *Shareef*, and *Edwards* in its written closing argument.  The Government cites *Roper* and *Jefferson* for the first time in its motion to reconsider.

*Id*. at 1249 (citing both *Roper* and *Obregon*).  The court also distinguished cases in which a car owner has lawfully loaned a vehicle to another, thereby entrusting that individual with a possessory interest in the car.  *Id*. at 1250.

In *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), the defendant was driving a rented U-Haul truck.  Shareef did not know the individual who rented the truck and claimed that he had merely been hired to drive it from St. Louis to California.  His name did not appear anywhere on the rental agreement. The court concluded that Shareef, as well as his companions, lacked standing to challenge the search of the truck because they had neither a possessory nor a property interest in the vehicle.  *Id*. at 1499.  Once again, the court emphasized that the truck rental company had not authorized the defendant to drive the vehicle.  *Id*. at 1499-1500.  Most recently, in *United States v. Edwards*, 242 F.3d 928 (10th Cir. 2001), the defendant was a passenger in a car that he had not rented, and his name did not appear on the rental agreement as an authorized driver.  The court cited *Obregon* and emphasized that Edwards lacked standing to challenge a search of the car because he had not rented the car and was not an authorized driver listed on the contract.  *Id*. at 936.

The foregoing cases demonstrate that the Tenth Circuit has been loathe to conclude that an individual has standing to challenge the search of a rented vehicle—regardless of whether that person is a driver or a passenger—unless the car rental company has authorized him, in writing, to drive the car.  Of these Tenth Circuit decisions, Diaz-Ortega attempts to distinguish only one: *Obregon*.  Diaz-Ortega argues that case is "factually inapposite" because Obregon failed to produce evidence that the individual who rented the car had authorized him to drive it.  In contrast, Diaz-Ortega has come forward with testimony that he helped pay the rental fee and had some sort of verbal agreement with Zazueta regarding the car.  However, the Court concludes that under *Obregon* and its progeny, this is a distinction without a difference.  In each of those Tenth Circuit opinions, the court focused not

4

on whether the individual who rented the car had authorized the defendant to drive it, but rather on whether the *owner* of the vehicle—the car rental company—had issued such authorization. Diaz-Ortega has cited no authority for the proposition that one who rents a car has the authority to permit others to drive it without the permission of the car rental company that owns it, thereby conveying a property or possessory interest protected by the Fourth Amendment.

Diaz-Ortega cites two other Tenth Circuit cases involving borrowed, rather than rented, automobiles. In *United States v. Rubio-Rivera*, 917 F.2d 1271 (10th Cir. 1990), the defendant had standing to challenge the search of the vehicle he was driving. However, unlike Diaz-Ortega, the defendant in *Rubio-Rivera* obtained consent from his friend, the owner of the vehicle, to possess and drive it. Therefore, *Rubio-Rivera* is inapplicable to this case. In *United States v, Arango*, 912 F.2d 441, 445-46 (10th Cir. 1990), the court concluded that a defendant who failed to demonstrate that he had permission from the owner to drive a borrowed car lacked standing to challenge a search. Neither of these cases assists Diaz-Ortega, because their reasoning in consistent with the line of cases following *Obregon*—that is, in order to establish standing, a non-owner driver or passenger must demonstrate that he had lawful authority  from the owner to possess and drive the car.

Finally, Diaz-Ortega advocates the approach taken by the Ninth Circuit in *United States v. Thomas*, 447 F.3d 1191 (9th Cir. 2006). In that case, the Ninth Circuit acknowledged that the Tenth, Fourth and Fifth Circuits had all adopted a bright line rule that an individual not listed on the rental agreement has no standing to challenge the search of a rented vehicle. While the court in *Thomas* rejected that approach and reached a different result, it matters little because this Court is bound to follow Tenth Circuit precedent.

As demonstrated by the rental contract admitted as an exhibit at the evidentiary hearing, the car rental company that owned the HHR at issue in this case did not authorize Diaz-Ortega to drive

5

the car, nor does his name appear on the agreement.   Therefore, under Tenth Circuit law he lacks standing to challenge the search of the vehicle.  This lack of standing renders moot the question of whether Diaz-Ortega voluntarily consented to the search of the car.

## II.     FRUITS OF DETENTION

The Tenth Circuit "has repeatedly recognized that although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention."  *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000).  As a result of the Court's conclusion regarding Diaz-Ortega's lack of standing to challenge the search of the HHR, the only questions that remain are whether or not Officer Valdez illegally detained or arrested him, and if so, whether the government obtained evidence as a result of the constitutional violation.  If the answer to both questions is yes, then the evidence must be suppressed.  *Id***.**

There are two types of seizures by police that implicate the Fourth Amendment: (1) investigative detentions, which are seizures of limited scope and duration and must be supported by a reasonable suspicion; and (2) arrests, which are more intrusive seizures and valid only if supported by probable cause.  *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006).  Diaz-Ortega does not argue that he was arrested without probable cause.  Instead, he contends that Officer Valdez lacked reasonable suspicion to detain him after the conclusion of the traffic stop, and that Officer Valdez had reasonable suspicion to detain only the driver, co-defendant Eder Zazueta.

When Officer Valdez asked Diaz-Ortega, along with his fellow passenger Jesus Barbo-Cecena, to exit the Chevy HHR, and then handcuffed them and directed them to sit by the side of the road, he detained them.  This conclusion is not in dispute.  What is in dispute is whether or not the

6

detention of Diaz-Ortega in particular was supported by reasonable suspicion.  In its previous Memorandum Opinion and Order, the Court found that Officer Valdez did have reasonable suspicion to detain Zazueta after traffic stop based upon his incomplete answers to Valdez' questions regarding Defendants' travel and work plans, Zazueta and Barboa-Cecena's apparent nervousness, Barboa-Cecena's use of an untraceable Boost mobile phone, and the unidentified chemical smell in the car. Now, Diaz-Ortega argues that this reasonable suspicion does not apply to him, because none of the factors supporting reasonable suspicion can be tied directly to him.  According to Diaz-Ortega, he was merely a passenger in a vehicle that Valdez suspected of illegal activity.  The Court disagrees. The evidence available to Officer Valdez at the time of the stop was that all three occupants of the car knew each other and were traveling to a common destination, but there was no coherent explanation for the purpose of their trip, the car had a chemical odor, two of the occupants appeared nervous.  These, along with the other factors listed above, are sufficient to provide reasonable suspicion to detain all three travelers in the car.  In other words, under the totality of the circumstances it was reasonable for Officer Valdez to suspect that Diaz-Ortega was involved in criminal activity.

Even if Officer Valdez had lacked probable cause, Diaz-Ortega's challenge would still fail because the challenged evidence–the controlled substance found in the HHR–was not the fruit of his detention.  Rather, Officer Valdez found the evidence as a result of the valid traffic stop and the voluntary consent to search provided by Zazueta.  Once Zazueta provided that consent, no legal barriers stood in the way of the search.  It was that consent, and not the detention of Diaz-Ortega, which led to the discovery of the evidence hidden in the car.  The Court finds that, under the facts presented at the hearing, Officer Valdez' detention of Diaz-Ortega was not a prerequisite to the search that led to the discovery of the narcotics.  For this additional reason, the detention of Diaz-

7

Ortega offers no basis to suppress the evidence found in the HHR.

**IT IS THEREFORE ORDERED** that *United States' Motion to Reconsider* [Doc. No. 86]

is **GRANTED**, and Diaz-Ortega's Motion to Suppress [Doc No. 53] is **DENIED**.


_____
**UNITED STATES DISTRICT JUDGE**